# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:05CV33
## [LEAD CASE]

| | | |
|---|---|---|
| PAULL ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| JULIUS JENNINGS WADE, Jr., | ) | |
| individually and d/b/a WADE | ) | |
| and WADE, Attorneys at Law, | ) | |
| JAMES H. WADE, individually | ) | |
| and d/b/a WADE and WADE, | ) | |
| Attorneys at Law, WADE AND | ) | |
| WADE, Attorneys at Law, | ) | |
| JOHNNY C. GODLEY as | ) | |
| Executor of the Estate of | ) | |
| MARGARET L. GODLEY, | ) | |
| deceased, and GODLEY, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the following motions:

1.    The Motion for Summary Judgment, filed by the Plaintiff Paull

Anderson (Anderson) on March 10, 2005 [Doc.16];

2.    The Motion to Take Judicial Notice of a Supreme Court Decision

[Doc.52], filed by Defendant Margaret Godley (Mrs. Godley) on

October 20, 2005;

3.     The Motion for Joinder of Claims, Remedies and Parties [Doc.66], filed by Plaintiff on April 2, 2007;

4.     The Motion to Strike [Doc.70], filed by Defendant Johnny Godley, *et al* on May 16, 2007; and

5.     The Motion for Sanctions against Plaintiff, filed by Defendant Frank Godley on September 25, 2007 [Doc.6 in 3:07cv318].


## PROCEDURAL HISTORY

The Plaintiff Paull Anderson (Anderson) initiated this action *pro se* on January 24, 2005, seeking a declaration of the rights of the parties pursuant to a Judgment previously rendered by the United States District Court for the Eastern District of Kentucky. [Complaint, Doc.1]. Anderson alleged that he was awarded that Judgment against the Defendants Julius Wade, James Wade, Wade and Wade, attorneys at law (the Wade Defendants), Mrs. Godley and Godley, Inc. in the amount of $611,200.53 on June 15, 2000, [Id., at ¶6], and that it was affirmed by the Sixth Circuit Court of Appeals on March 29, 2002. [Id., at ¶7]. He asserted that he has "attempted to enforce his Kentucky Federal Court money judgment in the

North Carolina State Courts under the Uniform Enforcement of Foreign Judgments Act, N.C.G.S. §1C-1701, *et. seq,*" [Id., at ¶14], but that registration of the Judgment was refused. [Id., at ¶14(a)]. Plaintiff was unsuccessful in appealing that decision. [Id., at ¶14(b) & (c)].

After the state court refused to enforce the Judgment, Plaintiff registered the Judgment in the United States District Court for the Western District of North Carolina. [Id., at ¶8]. Plaintiff alleges he thereafter attempted once again to register the Judgment in state court. There is no allegation or evidence as to whether that registration was successful. [Id. at ¶9].

In this action, Anderson seeks

[D]eclaratory judgment pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. Section 2201 that plaintiff's judgment is valid and enforceable in North Carolina against the defendants, and that the judgment has been properly recorded in the clerk's office at the Mecklenburg County Superior Court in Charlotte, N.C. pursuant to 28 U.S.C. Section 1963[.]"

[Id., at 6]. Anderson does not seek relief in the form of enforcement of the Judgment through this Court.

On February 18, 2005, Mrs. Godley filed an Answer raising the defenses of full faith and credit and *res judicata*. [Doc.10 at 5-7]. On February 22, 2005, the Wade Defendants filed an Answer in which they

3

asserted the same defenses. [Doc.15].

On January 16, 2007, Defendant Margaret L. Godley died. [Doc.63]. By earlier Order this Court has substituted Johnny C. Godley, Executor of the Estate of Margaret L. Godley, as a party Defendant in her stead.

Anderson initiated a separate action, this one against Mrs. Godley's son, Frank Godley, in the United States District Court for the Western District of Virginia on June 4, 2007.  [Complaint, *attached to* Order of Transfer, Doc.1-2 in 3:07cv318].[1]  Although not clear, the thrust of the Complaint appears to be an allegation that Frank Godley violated the federal racketeering act in administering his mother's estate.  That action was transferred to this District by the Hon. James P. Jones, Chief United States District Court Judge for the Western District of Virginia, on August 7, 2007. [Doc.1 in 3:07cv318].  Mr. Godley filed Answer [Doc.4 in 3:07cv318] and moved for sanctions pursuant to Federal Rule of Civil Procedure 11 on September 25, 2007. [Doc.6 in 3:07cv318].  By Order entered in October 2007, these two cases were consolidated. [Doc.8 in 3:07cv318, Doc.75 in 3:05cv33].

---

[1]All references to the record are to the consolidated action 3:05cv033 unless specified to be in the transferred action, 3:07cv318.

# ANDERSON'S MOTION FOR SUMMARY JUDGMENT

## Standard of Review

Anderson seeks a declaratory judgment.  The pertinent part of 28

U.S.C. §2201 provides that "[i]n a case of actual controversy within its

jurisdiction, . . . any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of

any interested party seeking such declaration, whether or not further relief

is or could be sought."

> Under the Federal Rules of Civil Procedure, summary judgment shall
> be awarded "if the pleadings, depositions, answers to interrogatories,
> and admissions on file, together with the affidavits, ... show there is
> no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law."  As the Supreme Court has
> observed, "this standard provides that the mere existence of *some*
> alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th

Cir. 2003) (emphasis in original).

A genuine issue exists if a reasonable jury considering the evidence

could return a verdict for the nonmoving party.  Shaw v. Stroud, 13 F.3d

791, 798 (4th Cir. 1994), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248, 106 S.Ct. 2505, 2510 (1986).  All parties argue that there are no

genuine issues of material fact and that Judgment can be entered as a matter of law.  As such, the Court will apply the law to the facts presented that the parties do not dispute.

**Factual Background.**

This case has its genesis in a Kentucky land transaction that went sour more than a decade ago, wherein Plaintiff proposed to purchase and Defendants Margaret Godley and Godley, Inc. proposed to sell the land in question.  The Wade Defendants are attorneys who represented the Godley Defendants regarding that transaction.  The United States District Court for the Eastern District of Kentucky entered a money judgment in the full amount of $611,200.53 in favor of the Plaintiff and against these five Defendants[2] on June 15, 2000.  The United States Court of Appeals for the Sixth Circuit affirmed that award on March 29, 2002.  In its ruling, the Sixth Circuit concluded that

> the district court [in Kentucky] did not err in finding that Anderson established by a preponderance of the evidence that he was entitled to $112,200.53 [sic] in compensatory damages.  Although the district

---

[2]It is unclear why Anderson has herein named Margaret Godley as a defendant in her capacity as the executrix for the Estate of M. R. Godley.  M. R. Godley was not named as a defendant in the Kentucky litigation and no judgment was entered against him in that action.  *See,* Anderson v. Wade, 33 Fed.Appx. 750 (6th Cir. 2002).

court erred in not applying the Kentucky punitive damages statute set
forth in K.R.S. 411.184, Anderson was properly awarded $500,000 in
punitive damages because he established by clear and convincing
evidence that Defendants [Mrs. Godley, Julius Wade and James
Wade] acted toward him with fraud, as defined by the statute, and
the amount of the award was justified by the factual circumstances of
this case.

Anderson v. Wade, 33 Fed.Appx, 750, 761 (6th Cir. 2002).

Anderson attempted to enforce this judgment in North Carolina on
numerous occasions. The first attempt was Anderson v. Wade, et. al., 00-
cvs-18921 filed in Mecklenburg County Superior Court.[3] [Plaintiff's
Memorandum, Doc.17 at 6]. By Order entered April 2, 2003, Hon. Jesse
B. Caldwell, Superior Court Judge, denied Anderson's motion to enforce
that foreign judgment. [Id.] Anderson appealed.

While that case was on appeal, Anderson filed a second action in
Mecklenburg County Superior Court, Anderson v. Wade, et. al., 03-cvs-
5490, in which he sought to enforce the same foreign judgment. [Id. at 7].
On July 3, 2003, the Hon. Robert P. Johnston, Superior Court Judge,
dismissed that case due to the previous ruling of Judge Caldwell which
was on appeal. [Id.] Although Anderson appealed this ruling as well, he

---

[3] Plaintiff has presented many of the facts in this case by simply stating them in
his memoranda rather than presenting *evidence*. The Court receives these assertions
as established facts only to the extent that they constitute admissions by the Plaintiff or
are conceded by the Defendants.

withdrew both appeals so that he could initiate a third action to enforce the judgment. [Id.]

On September 23, 2003, Anderson filed his third suit, Anderson v. Wade, et. al., 03-cvs-16356, in Mecklenburg County Superior Court seeking to enforce the same judgment. Hon. Marvin Gray, Superior Court Judge, conducted a hearing on the motion to enforce the Judgment on December 10, 2003. [Transcript, Ex. 9 to Doc.17]. In his argument before Judge Gray, Anderson acknowledged that the issue before that court was whether Plaintiff was precluded from enforcing the Judgment because it is contrary to the public policy of North Carolina. [Id., at 1-19]. The policy issue pertains to the portion of the Judgment awarding punitive damages. Since the punitives awarded in the Judgment exceed the amount that could be awarded under North Carolina's punitive damages statute, N.C. Gen. Stat. §1D-25(b), the Defendants argued that the Judgment is contrary to the public policy of the State as expressly set out in that statute. [Id. at 30]. Defendants argued that the improper punitive damages rendered the entire Judgment unenforceable because the state court had no authority to reduce the judgment; the Judgement was either enforceable as is or not at all. [Id., at 30-34]. Defendants also argued that Anderson had previously

attempted to enforce the Judgment in two separate actions and that his procedural errors had caused both of those actions to be dismissed. [Id., at 20-25]. Judge Gray held for the Defendants on all of these arguments and reduced his decision to writing as follows:

1. Plaintiff has failed to comply with the mandatory requirements of Article 17, G.S. Section 1C-1701, *et. seq*., particularly the provisions of N.C.G.S. Section 1C-1703.

2. Plaintiff has not met his burden under the provisions of N.C.G.S. Section 1C-1705, nor has he complied with the North Carolina Rules of Civil Procedure.

3. The judgment Plaintiff seeks to enforce is contrary to the public policies of the State of North Carolina, particularly the provisions of Chapter 1D of the North Carolina General Statutes.

4. Because the Judgment Plaintiff seeks to enforce is violative of the North Carolina Public Policy, it is unenforceable pursuant to the provisions of N.C.G.S. Section 1C-1708.

[Order, Doc.39-2 at 34].

Anderson appealed Judge Gray's ruling but the Supreme Court of North Carolina dismissed the appeal and denied his petition for discretionary review.[4] Anderson v. Wade, 606 S.E.2d 898 (2004).

---

[4] It is unclear whether the Plaintiff attempted to by-pass the North Carolina of Appeals or whether there was some unreported ruling by that court prior to the actions of the Supreme Court of North Carolina. It is clear, however, that it was the Plaintiff who sought review by the Supreme Court and that such review was denied, leaving the Superior Court's ruling intact.

Anderson's petition to the Supreme Court of North Carolina for a writ of *certiorari* was also denied.  <u>Anderson v. Wade</u>, 612 S.E.2d 316 (2005).  The United States Supreme Court also denied a petition for a writ of *certiorari* filed by Anderson.  <u>Anderson v. Wade</u>, 546 U.S. 826 (2005).

While those appeals were pending, on August 9, 2004, Anderson filed a Certification of Judgment for Registration in Another District from the Eastern District of Kentucky in the United States District Court for the Western District of North Carolina, Charlotte Division. [Memorandum, Doc.17 at 18].  On August 16, 2004, he filed a fourth action in state court, <u>Anderson v. Wade, et. al.</u>*,* 04-cvs-14623*,* seeking to domesticate the Judgment in North Carolina*.* [<u>Id</u>.] No status or disposition of that action is reported in the record.

**DISCUSSION**

Ferreting out what is before this Court from the convoluted filings has not been an easy task.  The Plaintiff's prayer for relief as set out in his Complaint reads as follows:

> WHEREFORE, plaintiff respectfully prays for declaratory judgment pursuant to Federal Rules of Civil Procedure Rule 57 and 28 U.S.C. Section 2201 that plaintiff's judgment is valid and enforceable in North Carolina against defendants, and that

the judgment has been properly recorded in the clerk's office at the Mecklenburg County Superior Court in Charlotte, N.C. pursuant to 28 U.S.C. Section 1963 and for such other relief as to the Court may seem just.

[Doc.1 at 6]

It is noteworthy that the only relief the Plaintiff seeks is a declaration from this Court as to the relative rights of the parties concerning whether Judgment obtained by the Plaintiff in the Eastern District of Kentucky (the Judgment) is enforceable in North Carolina. Plaintiff seeks no other relief in law or equity.

The question of whether Plaintiff's Judgment is "valid and enforceable" in North Carolina is answered by reference to two questions: (1) Were Plaintiff's actions under the Uniform Enforcement of Foreign Judgments Act, as adopted in North Carolina, N.C. Gen. Stat. §1C-1701, *et seq*., successful in providing Plaintiff with the right to enforce that Judgment in North Carolina? (2) If no, did Plaintiff's attempt to register his Judgment with this Court serve to overcome any defects in his earlier state court action?

The first question involves an examination of the Plaintiff's varied and numerous attempts to domesticate his Judgment in the North Carolina Courts, and an examination of the North Carolina statute pursuant to which

Plaintiff acted.  The Uniform Enforcement of Foreign Judgments Act, N.C. Gen. Stat. §1C-1701, *et seq.*, sets out a procedure by which a Judgment Creditor can domesticate and enforce a "Foreign Judgment" in the state courts of the State of North Carolina.  The statute specifically identifies a judgment "of a court of the United States" as being such a "Foreign Judgment" subject to domestication by this method.  The Judgment Plaintiff sought to domesticate was rendered by the United States District Court for the Eastern District of Kentucky, and as such falls within the Act. The first question before us is whether Plaintiff was successful in domesticating the Judgment.

North Carolina's statute sets out a procedure by which the Judgment Creditor may file the foreign judgment and serve notice of such filing upon the Judgment Debtor. N.C. Gen. Stat. §1C-1704.  The Judgment Debtor then has the opportunity to file a motion raising any applicable defenses. N.C. Gen. Stat. §1C-1705.  Upon the filing of such a motion, the court would then conduct a hearing to determine whether the foreign judgment will be domesticated and given effect in North Carolina.  N.C. Gen. Stat. §1C-1705(b); Quantum Corporate Funding, Ltd. v. B. H. Bryan Building, 175 N.C. App. 483, 623 S.E.2d 793 (2006); *accord*, Moss v. Improved

Benev. and Protective Order of Elks, 139 N.C.App. 172, 532 S.E.2d 825 (2000); Florida Nat. Bank v. Satterfield, 90 N.C.App. 105, 367 S.E.2d 358 (1988) (foreign judgment is subject to collateral attack only on grounds that judgment was obtained without jurisdiction, fraud was involved in the procurement thereof or enforcement would be against public policy).

Even though the record is quite incomplete, Plaintiff alleges in his Complaint, and thus makes a judicial admission, that he attempted to follow this procedure, but the Defendants filed motions objecting to the entry of the Judgment and three different North Carolina Superior Court Judges have declined to enforce Plaintiff's Judgment. It is clear from the Superior Court's Order in the last of these three actions[5] that the basis for

---

[5] This Order is the only one of the three found in the Record of this case and it is presented only as an attachment to the Plaintiff's Petition for Writ of Certiorari to the United States Supreme Court, which Petition Plaintiff filed as an attachment to his Motion to Supplement his Memorandum of Law in support of his Motion for Summary Judgment. [Doc.39-2 at 34]. The Record does reflect, however, that Plaintiff's first domestication action was filed in 2000, while the Kentucky Judgment was still on appeal to the Sixth Circuit. It is not known whether the Superior Court concluded that the domestication action was premature. The Record also reflects that the Plaintiffs second action was dismissed "as abated." This is apparently a reference to the Defendants having moved to dismiss by what was formerly called a "plea in abatement" but now is more generally referred to as the Doctrine of Prior Pending Action. It is unclear, but the Record indicates that the second domestication action was thus dismissed because of the pending appeal of the first action. As such, the Record reflects that the Plaintiff's third domestication action was the only one to address the merits of the Plaintiff's claim. This may explain why the Judgment of the third action is the only one found in the Record while all parties argue that the Record is sufficient for this Court to render Judgment as a matter of law.

denying Plaintiff relief was in part because of the procedural defects in the manner in which Plaintiff had pursued the domestication of the Judgment, but also in part because the court determined the Judgment to be contrary to the public policy of the State of North Carolina. The North Carolina statute specifically states that "The provisions of this Article shall not apply to foreign judgments based on claims which are contrary to the public policies of North Carolina." N.C. Gen. Stat. §1C-1708.

Plaintiff took numerous appeals from the decisions fo the Superior Court, including appeals to the Supreme Court of North Carolina, and even petitioned for *certiorari* to the United States Supreme Court. At each turn Plaintiff was denied domestication of his Judgment. At each stage the lower court's determination was left intact. The Judgment was held to be contrary to the public policies of the State of North Carolina and thus was not enforceable through a proceeding under N.C. Gen. Stat. §1C-1701, *et seq*. As such, Plaintiff was determined to have no rights pursuant to the Judgment in North Carolina as against the Defendants.

This answers our first question, whether Plaintiff's actions under the Uniform Enforcement of Foreign Judgments Act, as adopted in North Carolina, N.C. Gen. Stat. §1C-1701, et seq., were successful in providing

Plaintiff with the right to enforce that Judgment in North Carolina, and the answer is "No."

This brings us to the second question, namely whether the Plaintiff's subsequent actions in registering the Judgment with this Court served to improve or alter Plaintiff's rights against the Defendants in North Carolina.

The statute pursuant to which the Plaintiff acted in this Court, and to which the Plaintiff makes specific reference in his Complaint herein is 28 U.S.C. §1963, which reads in pertinent part

> A Judgment in an action for the recovery of money or property entered in any court of appeals, [or] district court, . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal . . . . A judgment so registered shall have the same effect as a judgment if the district court of the district where registered and may be enforced in like manner.

28 U.S.C. §1963.

In short, the Plaintiff presents the Court with this question: Does the Plaintiff's registration of the Judgment with this Court pursuant to 28 U.S.C. §1963 serve to overrule the North Carolina Courts' determination that Plaintiff had no rights to enforce the Judgment in this State? In short, Plaintiff asks whether the registration of the Judgment pursuant to 28 U.S.C. §1963 "trumps" the earlier determination of the state courts that he

had no right to enforce the Judgment.

In order to answer this question, we must first examine whether the state court determination is subject to being overturned. The Federal Full Faith and Credit Statute, 28 U.S.C. §1738 states that all judicial proceedings of a state "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." The Court of Appeals in this Circuit has construed this provision to mean that

> The full faith and credit statute, 28 U.S.C.A. §1738[,] governs [the] disposition of [plaintiff's] claim. That statute requires that federal courts afford state court judgments "full faith and credit." [Id.] (Providing that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.").

> To determine whether the full faith and credit statute applies in a particular case, a court engages in a two-step inquiry. Maindl v. Genesys Pac. Techs., Inc. (In re Genesys Data Techs., Inc.), 204 F.3d 124, 128 (4th Cir. 2000) (citing Marese v. Am. Acad. Orthopaedic Surgeons, 470 U.S. 373 (1985)). First, we "must refer to the preclusion law of the State in which the judgment was rendered" to ascertain the preclusive effect of the state-court judgment in that state. Heckert v. Dotson (in re Heckert), 272 F.3d 253, 257 (4th Cir. 2001); Maindl, 204 F.3d at 128. If the law of that state "would not bar relitigation of an issue or claim decided in the earlier proceeding, then the inquiry ends – a federal court will not give it preclusive effect either." Maindl, 204 F.3d at 128. However,

> "if state law would afford the judgment preclusive effect . . . then a federal court must engage in a second step – it must determine if Congress created an exception to §1738." Id. Only if federal law provides an exception to §1738 can a federal court refuse to give a state court judgment the same preclusive effect given it under the law of that state. Id.
>
> We therefore must first determine whether, under [state] preclusion law, the [state] court's judgment refusing to recognize plaintiff's foreign judgment bars [plaintiff's] claim for recognition of that judgment in the present suit.

Jaffe v. Accredited Surety and Casualty Co., Inc., 294 F.3d 584, 590-91 (4th Cir. 2002) (ellipses and parenthetical in original, additional internal citations omitted).  See also, Graves v. Associated Transp., Inc., 344 F.2d 894, 896 (4th Cir. 1965)("In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel."); In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995).

Under North Carolina law "a final judgment on the merits prevents re-litigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of actions between the parties or their privies."  Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986).  Collateral estoppel precludes parties "from retrying fully litigated issues that were decided in any prior

determination, even where the claims asserted are not the same."

McCallum v. North Carolina Co-op. Extension Serv., 142 N.C. App. 48, 51, 542 S.E.2d 227, 231, review denied, 353 N.C. 452, 548 S.E.2d 527 (2001). The doctrine is "designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." King v. Grindstaff, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (quoting Commissioner v. Sunnen, 333 U.S. 591, 599 (1948)).

In the state court proceeding, after conducting a hearing, the court determined that enforcement of the Judgment was not available to Plaintiff under N.C. Gen. Stat. §1C-1701 *et seq.* because that Judgment was contrary to the express public policy of North Carolina with regard to the awarding of punitive damages. Anderson's appeals from that ruling were dismissed. His petition for a writ of *certiorari* to the United States Supreme Court was denied. "'Under the doctrine of *res judicata* [in North Carolina], a final Judgment on the merits in a prior action in a court of competent jurisdiction precludes a second suit involving the same claim between the same parties or those in privity with them.'" Nicholson v. Jackson Cty. Sch. Bd., 170 N.C.App. 650, 654, 614 S.E.2d 319, 322 (2005); Hill v. West,

18

____ N.C. App. ____, ____ S.E.2d ____, 2008 WL 564718, 2008 N.C. App. Lexis 384 (March 4, 2008) (Where Defendant's appeal was dismissed, orders in the cause below were final Judgments on the merits, precluding a second suit involving the same claim between the parties). North Carolina law would therefore bar Anderson's claim for recognition of the judgment which a North Carolina court refused to enforce. City of Lumberton v. U.S. Cold Storage, Inc., 178 N.C.App. 305, 631 S.E.2d 165 (2006) ("In short, a party may not file suit seeking relief for a wrong under one legal theory and, then, after that theory fails, seek relief for the same wrong under a different legal theory in a second legal proceeding.").

That determination was left intact through appeals to the Appellate Division of the North Carolina courts and was not disturbed when presented to the United States Supreme Court. The issue was fully litigated and decided.[6] It is not subject to collateral attack.

Nonetheless, Plaintiff spends all but the last two pages of his

---

[6] It is unnecessary for the Court to reach the issue of whether there is any preclusive effect to the state court's determination that the Judgment was unenforceable because of the procedural shortcomings in the Plaintiff's actions under N.C. Gen. Stat. §1C-1701 et seq. Whether Plaintiff's Judgment is unenforceable under N.C. Gen. Stat. §1C-1708 because it violates North Carolina's public policy was determined with finality in the state court. There is no reason to find a second reason for the Judgment's unenforceability.

voluminous (42 page) Memorandum in Support of his Motion for Summary Judgment arguing that the North Carolina courts were wrong.[7]  He argues that the public policy exception of N.C. Gen. Stat. §1C-1708 does not apply; that the "Fauntleroy Doctrine" of <u>Fauntleroy v. Lum</u>, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908) requires the state courts to recognize the Judgment despite the claim that it is contrary to public policy; that the state court improperly applied N.C. Gen. Stat. §1D-25; and that the Defendants' motion pursuant to N.C. Gen. Stat. §1C-1705 in the state court action was not pursued with the adequate procedural formalities required by that statute.  In short, Plaintiff asks this Court to overturn the state court determination because the state courts were wrong on the merits.

It is unclear from these arguments whether Plaintiff believes he is entitled to relief effectuating a reversal of the state court's determination by

---

[7] Unfortunately, Plaintiff chose to argue these points using such language as:

The defendant's lawyers initiated their reprehensible ploy to corrupt, subvert and grossly misrepresent the power court's ruling, taint and prejudice the appeal, take advantage of the pro se plaintiff, and further deny him justice and fundamental fairness.  Defendant counsel prepared a deceitful, dishonest, proposed order which grossly misrepresented the trial judge's ruling.  [Plaintiff's Memorandum of Law Doc.17 at 9].

Such ad hominem rhetoric has no place in a memorandum of law to this Court.

virtue of *this* action or by virtue of his recordation proceeding under 28

U.S.C. §1963.  In this case the only relief Plaintiff seeks is a declaration of

the rights of the parties.  Plaintiff does not ask this Court to "overturn" or

otherwise vacate the state court's ruling.  If, despite his prayer for relief,

Plaintiff seeks for this Court to vacate the state court's rulings, this Court is

unable to do so.  As set out above, the state court has made a final

determination the Judgment cannot be enforced through the North

Carolina courts because the award of punitive damages in the Judgment is

contrary to the public policy of this state.  Based on the precedents

regarding the preclusiveness of that determination and the requirement of

28 U.S.C. §1738 that this Court recognize the state court's determination,

the Plaintiff is not entitled to any relief overturning the state court's

decision.

Likewise, in the proceeding under 28 U.S.C. §1963, there is no

provision in the law for this Court to enter any relief vacating or otherwise

modifying the ruling of any state court.  That statute calls for a purely

administrate act of recording the Judgment of another Federal jurisdiction.

There is no provision in the statue for challenging the underlying judgment,

and there is certainly no provision in the statute for modifying the

determinations of any state tribunal. In fact, this Court took no action with regard to the recordation of the Judgment in this District, except for the purely administrative act of the Clerk in recording the Judgment.

Notwithstanding these procedural impediments, the substance of what the Plaintiff seeks is a ruling of this Court overturning the state court's action as though this Court were the North Carolina Court of Appeals. This Court, however, has no appellate jurisdiction over the state courts of North Carolina. Under the so-called Rooker-Feldman Doctrine, "a United States District Court has no authority to review final judgments of a state court in a judicial proceeding." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed2d 206, 222 (1983). This Court does not have subject matter jurisdiction to entertain what Plaintiff argues this Court should do, whether pursuant to this action or pursuant to 28 U.S.C. §1963. Some of Plaintiff's points may be well taken, and the determination by the state courts may be utterly wrong. That, however, is of no consequence. Even if this Court were to perceive a miscarriage of justice in the state court's application of the law, it is this Court's obligation to treat the state court's final determination as exactly that: final.

In fact, one of the cases cited by Plaintiff underscores this point. In

Baker by Thomas v. General Motors Corp., 522 U.S. 222, 233, 118 S.Ct. 657 (1998), the United States Supreme Court held that a federal court cannot refuse to give full faith and credit to the judgment of a state court because it disagrees with the public policy basis for that decision.  Id. at 223, see also Jaffe v. Accredited Surety and Casualty Co., Inc., 294 F.3d 584, 592 (4th Cir. 2002).  Even if this Court were to determine that the state court's application of the public policy exception were completely in error, Baker and Jaffe would prevent the Court from overturning the state court's decision.

Plaintiff raises one last matter regarding the effectiveness of the Judgment.  In his prayer for relief Plaintiff asks this Court to declare "that the judgment has been properly recorded in the clerk's office at the *Mecklenburg County Superior Court* in Charlotte, N.C. *pursuant to 28 U.S.C. Section 1963*." [Doc. 1 at 6].  The only action taken pursuant to 18 U.S.C. §1963, however, was the recordation of the Judgment with *this* Court, not with the Mecklenburg County Clerk of Superior Court.  The Court can only assume that the Plaintiff is asking whether his latest (fourth) attempt to domesticate the Judgment in the North Carolina courts has been more successful than his first three attempts, owing to his having

(this time) first recorded the Judgment with this Court. There are substantial problems with addressing this issue. First, Plaintiff does not argue this issue in his memoranda of law supporting his Motion for Summary Judgment. As such, this issue (even if properly raised in the first instance) has been abandoned by Plaintiff. Moreover, Plaintiff has not provided to this Court any evidence of what has transpired in this latest foray into the state courts with the Judgment. Plaintiff has not filed a copy of what he has filed with the Superior Court, or any response or motion pertaining thereto filed by the Defendants. The Record does not even reflect whether this fourth domestication action is another one pursuant to the Uniform Enforcement of Judgments Act, N.C. Gen. Stat. §1C-1701, *et seq.*, or a suit at common law, as allowed under N.C. Gen. Stat. §1C-1707. Most importantly, Plaintiff has not provided the Court with a copy of any disposition of that proceeding, or even information about any such disposition, if such disposition has even occurred. Be that as it may, the result of that fourth state court proceeding cannot change the outcome of the matter presented herein. If the state court this time again holds that Plaintiff's Judgment is unenforceable, then the state's prior ruling remains unchanged. On the other hand, if the Superior Court now makes a one

hundred and eighty degree turn and holds that Plaintiff's Judgment is enforceable through the state courts, this would constitute an overruling of one Superior Court Judge (Judge Gray) by another Superior Court Judge, which the latter ruling judge has no jurisdiction to do. Luster v. Gooch Support Systems, Inc., 161 N.C. App. 738, 589 S.E.2d 144 (2003). As such, the latter ruling would be a nullity. The result is the same either way.

The claim against Margaret L. Godley presents an interesting issue. Since Mrs. Godley died on January 16, 2007, during the pendency of this action, her son, Johnny C. Godley, in his capacity as the Executor of the Estate of Margaret L. Godley has been substituted as a party Defendant. [Doc.76]. Plaintiff has no more rights against the Estate than he had against Mrs. Godley while she was alive. All of the analysis set out above identifies the rights that the Plaintiff may have had against Mrs. Godley as of her death. Plaintiff, however, has not presented anything to the Court concerning whether he has pursued this claim in the Estate proceeding. In fact, since the administration of estates is a matter in which the states have exclusive jurisdiction, Markham v. Allen, 326 U.S. 490, 494, 66 S. Ct. 296, 90 L.Ed. 256 (1946) (Federal Jurisdiction does not extended to claims involving interference with probate proceedings), and there is no evidence

before the Court as to what action has or has not been taken in the Estate proceeding, the Court cannot declare whether Plaintiff has preserved his rights in that Estate, and such determination must be left to the state court authorities making such determinations in the Estate proceeding. Since the North Carolina courts have already made a final determination that the Judgment is not enforceable through the state courts, and the Estate proceeding is pending in those same state courts, it is difficult for the Court to see how the Plaintiff can have retained any rights in that proceeding.

Plaintiff named Godley, Inc. as a party Defendant in this case, but has never achieved service on that Defendant. As such, this action as against Defendant Godley, Inc. will be dismissed.

Lastly, in addition to naming Margaret L. Godley as a Defendant in this matter in her individual capacity, Plaintiff also named her a Defendant in her capacity as Executor of the Estate of M.R. Godley, even though neither M.R. Godley nor the Estate of M.R. Godley were judgment debtors pursuant to the Judgment that is the subject of this action. Plaintiff failed to take any effective action to substitute for Mrs. Godley the successor Executor of that Estate as a Defendant in this action. On these facts, however, the Court must conclude that the Plaintiff never had any rights

against M.R. Godley or the Estate of M.R. Godley pursuant to the Judgment.

In conclusion, the Plaintiff has asked this Court to declare the rights of the parties pursuant to 18 U.S.C. §2201. The parties have presented evidence, admissions, concessions and stipulations reflecting that there are no genuine issues as to any material fact. A determination in this case can thus be made as a matter of law. The rights of the parties are as follows:

1. The Plaintiff has a valid Judgment, rendered by the United States District Court for the Eastern District of Kentucky against Defendants Julius Wade, James Wade and Wade and Wade, attorneys at law, in the original face amount of $611,200.53. The validity of that Judgment has not been altered by any of the subsequent proceedings.

2. Plaintiff's Judgment was a valid Judgment against Defendant Margaret L. Godley as of the date of her death, the validity of which Judgment was not altered by any subsequent proceedings.

3. This Court has no jurisdiction to declare what rights, if any, Plaintiff may have pursuant to that Judgment in the Estate of Margaret L. Godley or the Estate of M.R. Godley, exclusive jurisdiction for such

determination being in the state courts of the state where the Estate proceeding is pending.

4.  Plaintiff's Judgment, whether against the Wade Defendants, against Mrs. Godley prior to her death or in Mrs. Godley's Estate, is not enforceable and cannot be enforced through the state courts of the State of North Carolina.

5.  Plaintiff's Judgment has been duly recorded with the United States District Court for the Western District of North Carolina, and is enforceable through such means as may be available to the Plaintiff, if any, for the enforcement of a Federal Judgment, except that it may not be enforced through the state courts of the State of North Carolina.  The Court makes no determination (and has not been asked to make any determination) as to whether there are any such alternate means of enforcement available to Plaintiff.  Even if such had been sought, this Court would not have the subject matter jurisdiction to provide an answer. "The exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy, and 'a federal court [lacks] the power to render advisory opinions.'" U.S. Nat. Bank of Oregon v. Ind. Ins. Agents of Am., Inc., 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402

(1993) (citing <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed. 2d 272 (1975).

6. Plaintiff's Judgment affords him no rights against M.R. Ggodley, and afforded him no rights against M.R. Godley as of the date of his death because he was not a judgment debtor on the Judgment.

This case presents an unfortunate example of how unwise it is for a non-lawyer to attempt to prosecute legal matters *pro se*. While the Plaintiff may well have had very strong arguments to convince the state court of a different application of N.C. Gen. Stat. §1C-1708 (<u>see e.g.</u>, <u>MGM Desert Inn, Inc. v. Holz</u>, 104 N.C. App. 717, 411 S.E.2d 399, <u>disc. rev. denied</u>, 331 N.C. 384, 417 S.E.2d 790 (1991)), there is nothing in the record to show that such arguments were ever effectively presented. Moreover, it appears that Plaintiff's unfamiliarity with the rules of procedure caused his appeals in the Appellate Division of the state courts to be dismissed.

> Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, *this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants*. Thus, although we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, *the court cannot take on the responsibility of serving as the litigant's attorney in constructing*

*arguments and searching the record*.

Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (emphasis added). This rule is no different in the state courts. The result has been that the Plaintiff has left himself in a position where he cannot enforce his Judgment in this State, but has come to this Court in the form of a declaratory judgment action to ask this Court to fix the problem he created. All this Court can do under these circumstances is declare the rights of the parties as they have been left, which unfortunately for the Plaintiff does not undo the his defective lawyering.


**Motion for Judicial Notice.**

In October 2005, Mrs. Godley moved the Court to take judicial notice that the United States Supreme Court had denied Anderson's petition for a writ of *certiorari*. Since the Court has taken notice thereof, the Motion is denied as moot.

**Motion for Joinder**

Plaintiff, in his "Motion for the Joinder of Claims, Remedies and Parties," filed in March 2007, fails to grasp the distinction between permissive joinder and compulsory joinder. It appears that Plaintiff seeks

to bring into this matter other claims against other persons who are not parties to this action, simply because those claims have some indirect connection with the issues at hand in this case. Plaintiff, however, does not present to this Court a proposed pleading setting out the actual claims, but only sets out a summary of them in his motion. Allowing permissive joinder is discretionary in the Court. If Plaintiff wanted to bring such claims as part of this action he needed to present a proposed pleading stating the claims, and more importantly he should have filed the motion at least two years earlier. This case is now at the stage where judgment is being rendered. It is too late to join other claims to the present one. The Motion for Joinder will be denied.

**Motion to Strike**

On May 16, 2007, counsel for Mrs. Godley moved to strike Anderson's reply brief which allegedly contained false and offensive language directed at the parties, counsel and the North Carolina judiciary. The Court in its discretion will deny the Motion to Strike. The Court will admonish the Plaintiff, however, that the language and tenor of many of the Plaintiff's filings with this Court are wholly inappropriate, and that if any further such filings are made containing such defamatory and/or offensive

statements that the Plaintiff will be dealt with harshly.

**Rule 11 Motion**

On June 4, 2007, Anderson brought a separate suit against Frank Godley in the United States District Court for the Western District of Virginia alleging that Frank Godley's parents, both of whom were deceased at the time the action was filed, had engaged in a racketeering conspiracy injuring numerous victims, including Anderson. .  [Complaint, *attached to Order of Transfer*, Doc.1-2 in 3:07cv318].  In the Complaint, which is rambling and at times very difficult to interpret, Anderson claims that the conspiratorial acts resulted in the Judgment entered in the Kentucky federal court against Mrs. Godley.  Anderson alleges that after Mrs. Godley's death, Frank Godley

> acted with the intent to hinder, delay and further defraud the plaintiff creditor from ever recovering the monies stolen from him or his damages, to prevent him from enforcing and collecting his judgment, and to deny plaintiff justice and due process.  Those actions prevented plaintiff from delivering official court documents to the sons through the U. S. Mail and involved handling their mother's estate in a fashion to further hinder, delay, defraud and prevent the plaintiff from recovering the monies stolen from him and his damages from her estate[.]

[Id., at 8-9].  Anderson alleges a racketeering claim based on the alleged past actions of individuals and entities other than Frank Godly. [Id., at 9-

13]. He also claims a series of fraudulent conveyances of real estate beginning in 1995 and extending through 2004. [Id., at 14-15]. Anderson further alleges that Frank Godley is engaged in a civil conspiracy, fraud and fraudulent concealment in order to prevent Anderson from recovering the judgment against Mrs. Godley. [Id., at 16-27].

Defendant Frank Godley has answered and moved for Rule 11 sanctions.[8] Federal Rule of Civil Procedure 11 provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it - an . . . unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances -
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law . . . ;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

---

[8]While the case remained pending in Virginia, Defendant Frank Godley moved to dismiss it. That Court found there was no personal jurisdiction over the defendant and transferred the action here. Although not explicit, it appears the motion to dismiss was denied. [Doc.1 in 3:07cv318].

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b).

The Court notes that Defendant did not move for dismissal of the action as a sanction. Instead, he moved for an award of attorneys' fees. The bulk of the motion addresses conduct of Anderson in other lawsuits, conduct which did not occur in this Court. A full nineteen pages of the twenty-seven page brief are dedicated to Anderson's other litigation exploits. While those allegations show that Anderson is a prolific *pro se* litigant, this Court is compelled to assess this Motion based on Anderson's filings made before this Court in this action. Christian v. Mattel, Inc., 286 F.3d 1118 (9th Cir. 2002).

In the motion, counsel for the Defendant seeks an award of attorneys' fees in connection with the cost of defending the matter while it was still in Virginia. *See*, Edwards v. General Motors Corp., 153 F.3d 242, 245 (5th Cir. 1998) (Must be able to point to some offending filing in this court); In re Allnut., 155 F.3d 557 (4th Cir. 1998); Green v. Foley, 907 F.2d 1137 (4th Cir. 1990), *cert. denied*, 498 U.S. 900, 111 S.Ct. 257 (1990). None of the filings about which Defendant complains, however, were made

in this Court.  Edwards, 153 F.3d at 245-46 ("From removal through December 7, Crampton made no such [Rule 11] certification.").  As such, Defendant's Motion is premature.  To date Plaintiff has made no offending filing in this Court about which Defendant complains, but if Plaintiff persists in "later advocating" any frivolous filings that Plaintiff made in other courts that have been transferred here then Defendant may have a basis for refiling this motion. Fed.R.Civ.Pro. Rule 11.  For these reasons Defendant Frank Godley's motion will be denied without prejudice to refiling it.

The Court also notes that Defendant sought an award of attorneys' fees "to date and going forward, of responding to this frivolous lawsuit." [Memorandum of Law, Doc.7 in 3:07cv318 at 26].  The Court obviously cannot grant Rule 11 sanctions in anticipation of what Plaintiff may do in the future.

The Plaintiff is, however, provided warning that any future filings in this Court which are found to violate Rule 11, after notice and response, may result in the imposition of sanctions pursuant to the Court's inherent power and Federal Rule of Civil Procedure 11.  Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 819 (4th Cir. 2004).  Sanctions may include directives of a non-monetary nature, an order to pay a penalty into court,

an order directing payment to the Defendant of reasonable attorneys' fees incurred as a direct result of any such violation, and/or the imposition of a pre-filing injunction to prohibit any future filings in the United States District Court for the Western District of North Carolina based on the facts and circumstances involved with this consolidated litigation.

As addressed *infra*, with the entry of this Order the lead case, 3:05cv033, will be terminated because all issues in that case are disposed of, but the subsidiary case 3:07cv 318 (the Frank Godley case) will be continuing. With the history of filings written in an abusive manner, and actions that can be construed as harassment by litigation, the Court believes it is appropriate to admonish the Plaintiff that he needs to be much more careful - and much more civil - as this matter continues. For this reason, the Court will allow the Plaintiff ten days from the entry of this Order to amend his pleadings in the remaining subsidiary case (3:07cv318) to bring them into conformity with proper practice. The Court would also strongly encourage Plaintiff to obtain counsel for the purpose of going forward with this litigation. Appearing *pro se* has not worked well for Plaintiff and has been to the disadvantage of all involved in this litigation, including the Court.

**CONSOLIDATION**

Finally, the consolidation of the cases is no longer conducive to judicial economy. The entry of this Order and the other Order of even date herewith resolve all the claims set out in the original case (3:05cv033). For that reason and due to the age of the first filed case (3:05cv33) the consolidation order will be vacated so that the older case may be terminated.

**ORDER**

**IT IS, THEREFORE, ORDERED**, in Civil Case No. 3:05cv33, as follows:

1.     There being no genuine issue as to any material fact as to any claim set out in this case, the Plaintiff's Motion for Summary Judgment [Doc.16] is hereby **GRANTED** and the undersigned declares the rights of the parties as set out in the body of this Order and as more particularly set forth in the **Declaratory Judgment** that is entered contemporaneously herewith;

2.     The Motion to Take Judicial Notice of a Supreme Court Decision [Doc.52], filed by Defendant Margaret Godley, is hereby **DENIED** as

moot;

3.     The Motion to Join Claims, Remedies and Parties [Doc.66], filed by

       Anderson, is hereby **DENIED**; and

4.     The Motion to Strike Derogatory Remarks [Doc.70], is hereby

       **DENIED** as moot.

       **IT IS FURTHER ORDERED** that the portion of the Order of October

5, 2007 consolidating Civil Case No. 3:07cv318 with Civil Case No.

3:05cv33 is hereby **VACATED** and the Clerk of Court is instructed to re-

open Civil Case No. 3:07cv318 and to terminate Civil Case No. 3:05cv33.

       **IT IS FURTHER ORDERED**, in Civil Case No. 3:07cv318, as follows:

1.     The Motion for Sanctions against Anderson [Doc.6 in 3:07cv318],

       filed by Defendant Frank Godley, is hereby **DENIED** without

       prejudice to renewal.

2.     Plaintiff is allowed ten days from the entry of this Order to amend his

       pleadings to conform to the Rules of Civil Procedure or otherwise to

       conform to proper practice or otherwise move to voluntarily dismiss

       his case.

       **IT IS FURTHER ORDERED** that with the exception of the possible

filing of the above referenced amendment in Civil Case No. 3:07cv318 and

any Notice of Appeal from the declaratory judgment entered herewith in Civil Case No. 3:05cv33, the parties continue to be precluded from making any further filings in either of these matters absent prior permission from the Court. Such permission should not be lightly sought and the parties are instructed not to contact the Chambers of the undersigned by telephone or email but to address the Court only through written filing. Any request for permission to file shall not exceed two double-spaced pages in 14 point font with no exhibits and no footnotes.

**IT IS FURTHER ORDERED** that any violation of the terms and provisions of this Order may result in the imposition of sanctions pursuant to the Court's inherent powers and Federal Rule of Civil Procedure 11.

Signed: March 27, 2008

Martin Reidinger
United States District Judge